LUIS RODRÍGUEZ ROLÓN, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, JAIME FRANK PAGANACCI, JUDGE, Respondent.

No. CE-63-30.      Decided March 1, 1965.

*José M. Canals* and *Miguel A. Velázquez Rivera* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *Jenaro Marchand, Assistant Solicitor General,* for respondent.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

Pursuant to the provisions of § 5-201 of the Vehicle and Traffic Law of 1960 (Sess. Laws, p. 408), any person who operates a motor vehicle

(1) carelessly and recklessly, showing himself unmindful of the public rights and safety,

(2) without due care and prudence,

(3) in a manner which endangers or may endanger life and property, or

(4) who through the reckless driving causes injuries to another person, shall be guilty of reckless driving.

As a result of a traffic accident which occurred at 9 a.m. on Thursday, May 31, 1962, on Borinquen Avenue, of Santurce, a complaint was filed against Luis Rodríguez Rolón, appellant herein, in the San Juan Part of the District Court, for a violation of § 5-201 *supra*, consisting in that

". . . while driving along the aforesaid place he did not take into account the width, conditions, use, and traffic of the said public thoroughfare along which he was operating his motor vehicle, nor figured correctly the distance when passing a red

Ford vehicle . . . which was parked on the said Borinquen Avenue . . . and without due care and prudence in the use and operation of his vehicle . . . crashed into the Ford car . . . as a result of which the latter was badly damaged. Jesús Rivera, a Commonwealth policeman, received contusions in the accident, having been treated in the Professional Building Hospital . . . of Santurce."

The case went to trial on November 2, 1962. The prosecution evidence consisted mostly in the injured policeman's testimony. Defendant admitted the occurrence of the accident. He alleged as a defense that he had not. participated therein consciously or intentionally, and that it was due to the fact that a few seconds before the accident he had fallen asleep as a result of his physical and mental exhaustion and that he had not slept during the 45 hours immediately preceding.[1]

---

[1] The pertinent part of his testimony at the trial was as follows:

"Q. Tell me, Don Luis, where were you on the morning of May 31, 1962?

A. Well, after a full day's work in the San Juan Hotel I left at 6:30 a.m. We then changed our clothes and by the time we left it was 7 a.m. I had to take a fellow worker to La Riviera urbanization . . . by the way, you know, it rained all morning, you know, and one could not drive fast, and it took me some time to get there and return. When I reached the intersection at stop 26 between Borinquen Avenue and Ponce de León, I turned to the right; when I turned to the right I drove as far as the corner of 5th and 6th Streets in front of Apolo theater, you know, and all of a sudden something unexpected happened to me, you know, with the glare of the sun or something at that moment . . . I fell asleep. After that I don't know what happened . . . until the impact of the crash woke me up. Then, when I regained consciousness, I realized that I had crashed into a car which was standing on the right-hand side of the road. The policeman who was inside got out to ask me what had happened; I answered immediately that I had fallen asleep.

.    .    .    .    .    .    .    .

Q. Were you able to sleep between the 29th and 30th day?

No, sir.

Q. Why? Explain to me first why you were not able to sleep.

For urgent reasons, you know, because of my personal duties I was compelled to come from work on the morning of the 29th going on the 30th. When I arrived home at 7:30 a.m. I was informed that I should go and pick up my car which was being repaired in Luis Carrillo's shop in

The court of instance found him guilty of a violation of § 5-201 *supra*, and sentenced him to pay a fine of $150 or to serve 90 days in jail. He appealed to the Superior Court, San Juan Part, to which end the trial judge prepared and approved the following:

"STATEMENT OF THE CASE: The hearing of this case was held on November 2, 1962. Mr. José M. Canals assumed the defense. The People opened its case with the testimony of Jesús Rivera Morales, who testified briefly as follows: That his name is Jesús Rivera Morales. That he is a Commonwealth policeman. That on May 31 of this year, around 9 a.m., he was parked in a police car on Borinquen Avenue, of Barrio Obrero. That he knows the defendant since the day of the occurrence. (He points to him in open court.) While he was correctly parked on that avenue, a wagon 'came' and 'crashed' into the rear left of the car where the witness was seated. That since then the witness has been hospitalized as a result of the blows received in the crash. That as a result of the crash, the left rear of the police car was destroyed. On cross-examination, the witness said that the accident occurred at 9:30 a.m. That defendant's automobile was traveling from west to east. That the sun was not very bright at that hour. That he saw the defendant at the scene of the accident. That the

---

Hato Rey, next to the police station. I went immediately to the repair shop, but when I got there at 9 a.m. Carrillo, who was supposed to deliver my car, was not there. Then I decided to wait until he arrived and by that time it was 12 noon. But when he arrived he informed me that there were still a few things to be repaired, and then he said to me 'Wait a moment, we'll fix them in a moment.' But that moment extended until 4:30 or 5 p.m. Then I decided to wait and take the car with me because I need it badly for my personal use. Then I returned home to bathe and change my clothes and return to work, because the fact that these dances last until early in the morning does not mean that we did not have to start early. The reason is that the room has to be made ready for the dance, which begins at 10, at 10:30 or 11 at night after the coronations of the king, of the queen are over.

Q. Have you any family?
I have a large family.
Q. How many children have you?
I have seven children.
Q. How many hours had you been working?
Well, an average of over 40 hours."

defendant was operating a red Dodge wagon. That the whole front of the right-hand fender was smashed. That defendant was alone. The People rested its case and placed the other witnesses at defendant's disposal. Thereupon the defense called witness José M. García who testified in the same sense as witness Jesús Rivera Morales, but added that defendant said at the scene of the occurrence that he had fallen asleep while driving and that that was the cause of the accident. The next defense witness was defendant himself, who made a recital of the consecutive hours he had worked night and day and the reasons for not being able to sleep the day nor the night before the accident. He said that a few seconds before the accident he had fallen asleep while driving his wagon. Before submitting the case, the defense attorney made an elaborate exposition on the theory that a person who is asleep cannot commit an offense. That if such person commits a criminal act, he could not be held criminally liable since the element of intention would be lacking. He presented a long list of commentators on the matter. Accordingly, he moved for defendant's acquittal. It was denied. On the evidence believed the court found defendant guilty of a violation of § 5-201 of Act No. 141 of 1960, and imposed a penalty of $150 fine or 90 days in jail, without costs."

On July 2, 1963, after the hearing on appeal was held, the San Juan Part of the Superior Court rendered the following judgment:

"JUDGMENT. The hearing in connection with this appeal was held on July 1, 1963. In his argument appellant reiterated the error already assigned in his brief. This error is based on the fact that according to the evidence which the trial court had under consideration, defendant, appellant herein, was asleep at the moment of the accident object of the complaint. He considers this fact—being asleep—as a defense to criminal liability. We do not agree. If appellant was conscious of his physical exhaustion and mental fatigue, he should not have assumed the responsibility of operating a motor vehicle. In so doing he was grossly negligent, and he should answer for the natural consequence of his reckless act. The judgment appealed from will be affirmed."

To review those proceedings we issued a writ of certiorari. Petitioner maintains that the trial court erred in failing to determine that he was asleep at the precise moment of the crash, and in refusing to acquit him on the ground that he was not criminally liable in such a situation.

He admits that the first assignment involves a question of weighing of the evidence, but that, this notwithstanding, there was no reason for disbelieving his testimony. For the reasons which we shall set forth later, if the failure to conclude that he was asleep constituted error, it would not be sufficient basis to disturb the judgment appealed from.

Petitioner's main contention, assuming that it would have been determined that he was asleep, is that he committed the act charged without being conscious of it, without criminal intention, and therefore that he was not criminally liable in the light of § 39(6) of the Penal Code.

His distinguished attorney has presented two very interesting briefs on the modern theories on criminal liability for acts or omissions committed by "the mentally ill, sleepwalkers, those who are delirious by fever, and those who commit a violation in the twilight state of sleep," with citations of comments of renowned penologists. Notwithstanding the great scientific value of those doctrines, we are not convinced that, in the light of the concurring circumstances, the commission of that violation of § 5-201 could not be imputed to defendant for criminal irresponsibility.

Let us sum up the circumstances of the case. Petitioner Luis Rodríguez Rolón is a hotel waiter; as such he has worked many years. Late in May 1962, the time of school graduation celebrations, he was working in San Juan Hotel. On Tuesday, May 29, by reason of those celebrations, he worked from noon until 6:30 a.m. of the following Wednesday, May 30. He arrived at his home at 7:30 of that morning. Instead of going to bed, he went to a shop in Hato Rey to get his car which was being repaired there. While

the repair was being terminated, he remained in the shop until 5 p.m. of Wednesday. He returned home at that hour, he bathed, changed his clothes, and went back to work early in the evening. He worked all night Wednesday. He left the hotel at 7 a.m. of Thursday, May 31. According to his recital on p. 6 of his second brief, on the morning of the accident and after coming from work, he drove his car *"feeling tired and sleepy, but had some coffee and figured he would have no difficulty driving . . . on previous occasions he had been compelled to drive under identical circumstances of drowsiness and tiredness, and had never fallen asleep while driving."* Yet, he did not go home directly, but took a fellow worker from the hotel to an urbanization which was quite far. He noticed that "it had been raining all that morning," for which reason he "could not drive fast and it took me quite some time to get there and return." When he reached Martín Peña by way of Ponce de León Avenue, he turned to the right toward Borinquen Avenue and as he went past Apolo theater "all of a sudden something unexpected happened to me . . . with the glare of the sun or something at that moment . . . I fell asleep . . . and there . . . I didn't know what happened . . . until the impact of the crash woke me up."

As a result of that crash, the rear left side of the police car was smashed and policeman Jesús Rivera Morales was injured and had to be removed to a hospital for treatment.

■ That set of facts is sufficient to conclude that Rodríguez Rolón was "sleepy and tired" from the moment he left work, and while driving was fully conscious of his state of physical exhaustion, of his mental fatigue, of his prolonged loss of sleep, a clear consciousness of the conditions of the public thoroughfare on which he was traveling, and of the possibility or likelihood of being overcome by sleep while driving. There is no question that in operating his vehicle

in such a reckless fashion along centric avenues, during heavy traffic hours—during the return from a friendship trip which he was not bound to make and which augmented his physical tiredness—he showed himself unmindful of the public rights and safety, endangered life or property, and through his reckless driving finally caused injuries to a certain person.

Such conduct, observed before falling asleep, constitutes reckless driving in the light of § 5-201 of the Vehicle and Traffic Law. The fact that he fell asleep was precisely one of the foreseen consequences of his reluctance to go to sleep normally, and of his mistake in believing that after 45 sleepless hours he could keep himself from falling asleep with just a cup of coffee. This is not a fortuitous case, nor of unforeseeable consequences.

■ Although controvertibly, the presumption is that every person intends the ordinary consequences of his own act. It cannot be argued that petitioner's conduct until the very moment he fell asleep was not voluntary. From the moment he started to drive at his own risk, notwithstanding his state of exhaustion, tiredness, mental fatigue, and prolonged lack of sleep, he became a threat or potential danger to the safety and life of other persons using those public thoroughfares. A driver who by his conduct creates a risk for those using said thoroughfares cannot deny that his intention was to cause damage to someone and to his property, although not to anyone in particular. The seriousness of the impact and the injuries to the policeman show that defendant was driving, under such conditions, at excessive speed along Borinquen Avenue.

The lack of due care and prudence makes every vehicle a potential instrument of destruction and death. One of the cardinal or basic objectives of our Traffic Law is the public safety. Accordingly, the law requires, among other things, that every person who operates an automobile shall be mentally and physically able therefor, and that he be a person of

sufficient moral solvency to drive a motor vehicle with due consideration for the public safety—§ 3-103; that he shall have at all times "proper control of the vehicle"—§ 5-101—for safe driving—§ 5-102; and it has declared that all acts enumerated in § 5-201, the application of which is herein involved, shall constitute reckless driving.

In its judgment of May 21, 1949, construing provisions of the Spanish Code of Circulation, the Supreme Court of Spain has held that the symptoms of normal sleep never appear unexpectedly, suddenly, or instantly.[2]

---

[2] In the work *"Los Accidentes de Automóvil"* by the Spanish jurist Juan Canals Martí, Bosch Editorial, Barcelona, 1957, and under the subtitle *Somnolencia,* pp. 87–89, we find the following summaries of three judgments rendered by that Court on the matter:

"There are present in the fact object of the findings in the judgment appealed from the three elements established by the doctrine of this Court as characteristic of the offense of imprudence, such as an unmalicious voluntary action or omission, a real and definite damage, and the relation of cause and effect between the former and the latter, the first element consisting in appellant's voluntary insistence in operating the truck in question without slackening the speed, notwithstanding that the signs of sleepiness never set in unexpectedly, suddenly, and instantly in the normal organism. Consequently, on that occasion he could and should have foreseen them and adopt proper measures in order that his inevitable state of unconsciousness would not reflect, as it did, on the control of the truck which he was operating, with the consequent deficiency and results which were clearly foreseeable. The second element consists in turn of the injuries and damages described and of which no one is ignorant.

"In view of the foregoing reasonings, the eighth circumstance of § 8 of the Penal Code is no defense in the case under consideration, as sought by appellant, since upon feeling the first signs of drowsiness on that occasion he should have stopped the truck which he was operating and adopt proper measures, for he could not disregard his own inevitable experience that the signs of sleepiness are unequivocal and that they do not take long to be felt more intensively with the exhaustion of the senses of sight and hearing, relaxing at the same time the muscular tension and reducing noticeably the person's physical and mental activity, thereby losing consciousness of his surroundings; and by his own failure to adopt the measures urgently required by his personal condition in order to avoid the great dangers to which his condition might expose him, appellant performed an act which was absolutely unlawful and which excludes him from the benefits sought. Judgment of May 21, 1949.—*Col. Leg.* 200.

"The doctrine of fortuitous event is wholly inapplicable to the case under consideration since, although the operation of a mechanical motor

Section 5-201 is entitled "Reckless Imprudence or Negligence." It defines as reckless driving the reckless operation, the lack of due care and prudence, the manner of driving which endangers *or may endanger* life or property, and the reckless driving which causes injuries to another person.

He was not charged with and convicted for what he did or could have done while he was asleep, but for his previous

---

vehicle is a lawful act for one authorized therefor by regulation, one does not act with due diligence if he is in a state of physical exhaustion as a result of the loss of normal sleep the previous nights and not giving his body sufficient rest; and precisely on that account his having taken the road and falling asleep caused the truck to veer off and run into a ditch causing bodily injury to its occupants; and since such act is indicative of recklessness because it is foreseeable, and no one may be blind to the possibility that in starting on a trip under those unfavorable conditions he was running the risk of being overcome by sleep, with evident danger to the personal integrity of the users of that means of locomotion and of the thoroughfares used by them, particularly if he had to make a long trip at nighttime, and there is an adequate causal relation between the reckless act of operating an automobile under those circumstances and the actual harm caused by such manifest unforesightedness. Judgment of March 3, 1951.—*Col. Leg.* 105.

"The operation of a mechanical motor vehicle early in the morning, in a state of exhaustion resulting from long hours of driving, is most imprudent, since in such dire conditions it is not always possible to control its movement nor to be on the lookout for the multiple incidents of the incessant urban and interurban traffic requiring the driver to exercise due diligence and utmost care to overcome the obstacles frequently encountered and avoid causing damage to persons or to their property; and it is clear that when a truck is operated on the highways late at night, the driver being tired out by an intensive and long day's work, it is natural that his energies wear out, that consciousness of the work to be performed be lost at some time, and that on certain occasions sleepiness may cloud the panoramic view of the road which must be watched closely in order to adopt proper measures in each case to guarantee normal circulation which is always exposed to serious risks which may and should be foreseen. That is why to drive a vehicle under such conditions as defendant did presupposes manifest recklessness, a characterization which may not be reduced to mere imprudence, with violation of the regulations, since the agent's action is the action provided by § 17 of the Code of Circulation. It is a well-established doctrine that the violation of regulatory norms only determines, in the case of mere imprudence, the aggravation of the fact from fault to offense, but it does not prevent the classification of reckless imprudence whenever its seriousness so requires and it is so appreciated in the case under consideration, since if the defendant had

negligent conduct in deciding to drive in that condition, for his carelessness and failure to take the precautions required by his condition, and for not preventing what he had foreseen could occur. As correctly stated by the Superior Court: "If appellant was conscious of physical tiredness and mental fatigue, he should not have assumed the responsibility of driving a motor vehicle. In doing so, he was grossly negligent and should answer for the natural consequence of his reckless act."

The writ issued will be quashed.

been in good physical condition to carry out his commitment after taking a needed rest, the harmful result would not have been produced. And since every driver should be conscious of his responsibility before starting on a long trip, he should estimate his fitness and decide whether he is in a condition to withstand long hours of travelling and to be on the lookout for the contingencies which constantly occur. If he ventures to start on a trip in unfit physical condition, he is acting recklessly and his conduct in producing the harm comes squarely within the ambit of the first paragraph of § 565 of the Code, as rightly concluded by the trial court. Judgment on March 9, 1955.—R. 558."